MANDELBAUM SALSBURG, P.C.
**1270 Avenue of the Americas**
**Suite 1808**
**New York, NY 10020**
**Telephone No.:  (212) 776-1834**
**Attorneys for Plaintiff**

### UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STGG REALTY, LLC,<br><br>             Plaintiff,<br><br>       v.<br><br>JAGUAR LAND ROVER NORTH AMERICA, LLC<br><br>             Defendant. | Civil Action No.<br><br>**COMPLAINT AND**<br>**JURY DEMAND** |

Plaintiff STGG Realty, LLC ("**Plaintiff**", "**Customer**" or "**STGG**"), with an address of 227 E. 58th Street, 3rd Floor, New York, New York 10022, by way of its Complaint against Defendant Jaguar Land Rover North America, LLC ("**JLRNA**" "**Defendant**" or the "**Distributor**"), alleges and says:

### FIRST COUNT
**(Jurisdiction and Venue)**

1.  Jurisdiction is proper under 28. U.S.C. 1331 based upon this action arising under the laws of the United States including 15 U.S.C. §2310(d), and the amount in controversy exceeds $75,000 exclusive of interest and costs.

2.  Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(1) and because the events relating to the claims asserted herein occurred in this judicial district.

**Background**

3. Customer purchased a new top-of-the-line 2018 Range Rover Supercharged, a Land Rover model, VIN No. SALGS5RE5JA504536 (the "**Vehicle**") on or about May 18, 2018 from Jaguar Land Rover Manhattan (the "**Dealer**") for $131,663 inclusive of sales tax, license, registration, documentary and inspection fees.

4. The Vehicle was covered by warranty at original delivery to the Plaintiff, was purchased in New York, is registered in New York and has been driven primarily for personal, family and/or household purposes.

5. Customer purchased the Vehicle based upon the representations, assurances and warranties of JLRNA that the Vehicle was, inter alia, reliable and fit for its intended purposes which promises, as it turned out, were false.

6. In fact, the Vehicle is considered a lemon under the New York New Car Lemon Law, General Business Law §198-a et al. (the "**Act**") because within the earlier of 18,000 miles or two years from the date of original delivery, an authorized Land Rover Dealer attempted to repair the same problems on four or more occasions and those problemes continue to exist, and the Vehicle has been out of service by reason of repair of one or more problems for a cumulative total of thirty (30) days or more, resulting in a substantial impairment of the value of the Vehicle to the Customer.

7. As of December 6, 2018, the Vehicle had been driven only 7,017 miles and, according to a repair order ("**R.O.**"), was brought to the Dealer because "the radio reboots intermittently", the "screens flicker", and the backup camera does not come on intermittently. A copy of the R.O. opened on December 6, 2018 and closed on December 12, 2018 is annexed hereto and incorporated herein by reference as Exhibit 1.

4818-1099-1029, v. 1

8. According to the R.O., the "InControl Touch Pro [Land Rover's multimedia system] with RSE [Rear Seat Entertainment] software needed updating from Phase 2.5 to Phase 3.0, R.O. 14531 indicates that the Dealer performed "Phase 4 Updates", and "performed in control pro update with rear entertainment IMC [Infotainment Master Controller] – in control touch pro update and ISC [Infotainment Slave Controller] – in control touch pro update." The R.O. further indicates that the Dealer updated the "Interactive Display Module "A", the "Interactive Control Display Module" and "performed ICDM and IDMA update for upper and lower screens."

9. In response to the complaint about the backup camera, the R.O. references the problem as "electrical" and related to "line b", the section of the R.O. dealing with the "InControl Touch Pro with RSE – Software Update … ."

10. As stated, the foregoing R.O. was opened on December 6, 2018 and closed on December 12, 2018.

11. The Vehicle was next brought to the Dealer for repairs on or about April 23, 2019, at which time the mileage on the Vehicle was 10,512.

12. According to R.O. 20314 (a copy of which is attached hereto and incorporated herein by reference as Exhibit 2), the Customer stated that the "infotainment screens flicker and are unresponsive at times." According to the R.O., the cause was "Infotainment Master Controller and Infotainment Slav." The R.O. further indicates that the Dealer "confirmed customers complaint … ."

13. On this second occasion in the shop for the same problems, the Vehicle was with the Dealer from on or about April 23, 2019 to on or about April 29, 2019 and/or the R.O. was open for that period of time.

3

14. Approximately one month later, on or about May 24, 2019, the Customer brought the Vehicle to the Dealer at which time the Vehicle had been driven approximately 11,455 miles.

15. At that time, according to R.O. 21612, the Customer stated, among other things, that the radio volume at random times will cut out while the music is playing and, according to the R.O., the Dealer confirmed this complaint. The Customer also stated that the steering wheel control pad backlights will cut out and come back on at random, and the Dealer also confirmed this complaint according to the R.O. (A copy of the foregoing R.O. is annexed hereto and incorporated herein by reference as Exhibit 3).

16. During this third occasion, the Vehicle was in the shop from on or about May 24, 2019 to on or about May 30, 2019 and/or the R.O. remained open during that time. (See, Id.).

17. A few months later, on or about October 10, 2019, the Customer brought the Vehicle to the Dealer for the fourth time for the same problems. At that time the Vehicle had been driven 15,944 miles.

18. On that occasion, according to R.O. 26819, the Customer stated that the touch screens flicker and freeze, and the Dealer indicated that the cause was the IMO and ISC, and noted that it updated the IMC, ISC, Interactive Display Module "A" and Interactive Control Display Module. The R.O. also indicates that the Dealer verified the customer's concern. (A copy of R.O. 26819 is attached hereto and incorporated herein by reference as Exhibit 4).

19. That same R.O. also indicates that the Dealer performed N347, "Software Over the Air ("**SOTA**") – InControl Touch Pro Software Update" and that the update failed. According to the R.O., the "download failed, performed with test book." Id.

20. That same R.O. also indicates that the Dealer performed recall/campaign N367, which relates to the parking camera system. Id.

4

21. According to the R.O., the Vehicle was at the Dealer from on or about October 10, 2019 to on or about October 17, 2019 and/or the R.O. remained open during that time.

22. About one and a half weeks later, the Customer was required to bring the Vehicle back to the Dealer for approximately the fifth time for the same problems.

23. According to R.O. 27539, the Vehicle was brought to the Dealer on or about October 28, 2019. A copy of that R.O. is annexed hereto and incorporated herein by reference as Exhibit 5.

24. At thath time the Customer stated that the "Infotainment Screen goes blank intermittently. Needs to turn off Vehicle and back on to correct." Id. There is also reference again to the Parking Camera System Stability.

25. According to said R.O., the cause was "electrical", and the Dealer performed "update on amp." At that time the Customer also complained that the lower screen goes blank intermittently. Ud,

26. During this visit, the Vehicle was in the shop from on or about October 28, 2019 to on or about November 6, 2019 and/or the R.O. remained open during that time period, and the Vehicle's mileage was 16,186. Id.

27. Less than one week later, on or about November 12, 2019, the Customer brought the Vehicle to the Dealer for approximately the sixth time for the same problems.

28. According to R.O. 28173, the Customer stated that the Vehicle radio was on but no noise was coming out of Infotainment. The Dealer, again, listed the problem as "electrical". A copy of the R.O. is annexed hereto and incorporated herein by reference as Exhibit 6.

29. Said R.O. also confirmed that "there was no volume. The IDMA shows a volume level of 5 using the steering wheel and volume knob." The R.O. describes that on this occasion,

the Dealer removed "the f/l [front left] seat and carpet for access to the AAM [Amplifier], R&I the center console & IP for access to the ICDM [Interactive Control Display Module] & IDMA." In addition, the Dealer replaced the AAM.

30. That same visit the Customer stated that the touch screen freezes and, again, the Dealer indicated the cause was "electrical". That R.O. also again noted an issue with the Parking Camera System Stability.

31. On that visit, according to the R.O., the Vehicle had been driven 16,536 miles and was at the Dealer from on or about November 12, 2019 to on or about November 21, 2019 and/or the R.O. was open during that time. About one month later, on or about December 26, 2019, the Customer brought the Vehicle to the Dealer, and the R.O. notes that the Customer was complaining that (A) the lower screen turns off; (B) the upper screen gets stuck on camera and will not go back to the initial screen; (C) the radio was unavailable, and a message comes on intermittently when driving the Vehicle and will not play anything. A copy of that R.O. is annexed hereto and incorporated herein by reference as Exhibit 7.

32. This was approximately the seventh visit for the same problems and, at that time, the Vehicle, with mileage of approximately 17,500, was in the shop from on or about December 26, 2019 to on or about January 10, 2020 and/or the R.O. was open during that time.

33. That R.O. again also references the parking camera system stability and its recall campaign. .

34. Thereafter, the Customer returned a loaner car but refused to take the Vehicle back.

35. For the past few months, the Customer's counsel has written the Dealer and/or JLRNA numerous times to discuss the Vehicle, but has gotten nothing but a runaround. Despite

numerous telephone calls to the Distributor, no one has had the courtesy to return any of those calls.

36. Based upon the above, it is clear that the Vehicle has been in the shop for four or more times for the same problems and the Vehicle has been out of service by reason of the repairs for a cumulative total of thirty (30) days or more, within less than 18,000 miles and in less than two years, and the Dealer was unable to fix the Vehicle.

**(Cause For Action)**
**(New York New Car Lemon Law)**

37. The Vehicle was purchased new, has been used primarily for personal, family and/or household purposes and at all times has been registered in New York.

38. Despite the Vehicle having been in the shop for the same type of problems at least seven (7) times, all within two years from the date of delivery and within eighteen thousand (18,000) miles, the Customer continues to have the same type of problems with the Vehicle and the value of the Vehicle to the Customer is, therefore, substantially impaired.

39. As a result, there is a presumption under the Act that the Vehicle is a lemon.

40. As a lemon, under the Act Defendant must refund the purchase price of the Vehicle or replace same.

41. As a direct and proximate result of Defendant's breaches, as aforesaid, the Customer has suffered substantial damages.

**SECOND COUNT**
**(Magnuson-Moss Warranty Act)**

42. Customer repeats and realleges all of the allegations set forth above as if same were fully set forth herein at length.

43. Congress enacted the Magnuson-Moss Warranty Act, 15 U.S.C. §2301 et seq. (the "**MMWA**") in response to widespread complaints from consumers that many warranties were misleading and deceptive, and were not being honored.

44. To remedy this problem of deception and failure to honor warranties, the MMWA imposes civil liability on any "warrantor" for, inter alia, failing to comply with any obligation under a written and/or implied warranty.

45. The MMWA authorizes a suit for damages, and other legal and equitable relief, as well as attorneys' fees.

46. Defendant is a "warrantor" and "supplier of a consumer product" and the Customer is a "consumer" within the meaning of the MMWA.

47. The Vehicle has repeatedly failed to live up to various express and/or implied warranties in violation of, inter alia, the MMWA.

48. As a direct and proximate result thereof, Customer has suffered substantial damages in excess of $50,000 exclusive of interest and costs.

49. The aforesaid conduct of Defendant was willful, wanton, malicious and/or in reckless disregard of Customer's rights.

## THIRD COUNT
### (Breaches of Express and/or Implied Warranties)

50. Customer repeats and realleges all of the allegations set forth above as if same were fully set forth herein at length.

51. The Vehicle was sold to Customer under the misrepresentation that, inter alia, it was free from defects that would impair its use, value and/or safety.

52. Defendant was aware of the particular purposes for which the Vehicle was to be used and for which it could not be used because of its condition.

53. The Vehicle could not pass without objection in the trade and it was not merchantable.

54. The aforesaid conduct of Defendant constitutes, <u>inter alia</u>, breaches of express warranties, the implied warranty of fitness and the implied warranty of merchantability.

55. As a direct and proximate result thereof, Customer has suffered substantial damages.

**FOURTH COUNT**
**(New York Deceptive Trade Practices)**

56. Customer repeats and realleges all of the allegations set forth above as if same were fully set forth herein at length.

57. The sale of the Vehicle to Customer under the misrepresentation that the Vehicle was free from defects that would substantially impair the use, value or safety of the Vehicle represents an unlawful or deceptive trade practice under N.Y. Gen. Law §349.

58. Defendant violated the New York Deceptive Trade Practices Act ("**DTPA**") in one or more of the following ways:

    A. making fraudulent or negligent misrepresentations as herein before alleged;

    B. representing the Vehicle to be of good, merchantable quality, free from defects when, in fact, it was not;

    C. representing that the repairs could be performed properly when Defendant knew, or should have known, this was not the case;

    D. failing to reveal material facts including, but not limited to, the nature of the non-conformities and defects complained of herein; and

E. failing to offer a refund of the purchase price of the Vehicle in accordance with the applicable warranties and/or the law.

59. As a direct and proximate result of said breaches, Customer has suffered substantial damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff STGG Realty, LLC, demands judgment on the Complaint against Defendant, as follows:

A. Damages;

B. Punitive Damages;

C. Treble Damages;

D. Repurchase or Replacement of the Vehicle;

E. Reasonable attorneys' fees;

F. Interest;

G. Costs of Suit; and

H. Such further relief as is just and equitable under the circumstances.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

MANDELBAUM SALSBURG, P.C.
Attorneys for Plaintiff

By: /s/Lauren X. Topelsohn
Lauren X. Topelsohn,, Esq.

Dated: February 19, 2020